UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GAETANA M.,[1] <br>     *Plaintiff*, <br><br> v. <br><br> KILOLO KIJAKAZI, COMMISIONER <br> OF SOCIAL SECURITY,[2] <br>     *Defendant*. | 3:20-CV-01569 (SVN) <br><br><br><br><br><br> March 28, 2022 |

**DECISION AND ORDER ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM**

Sarala V. Nagala, United States District Judge.

Plaintiff Gaetana M. brought this suit pursuant to 42 U.S.C. § 405(g), to appeal the decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying her claim for Social Security Disability Insurance benefits ("SSDI"). Plaintiff filed a Motion for an Order Reversing the Decision of the Commissioner or, in the alternative, a Motion for Remand for Another Hearing. ECF No. 16. Defendant cross-moved for an Order Affirming the Commissioner's Decision. ECF No. 18. For the reasons outlined below, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a fifty-nine-year-old woman with a long and complicated medical history. *See generally* ECF No. 13 at 465–1497. Prior to September 30, 2015, Plaintiff's date last insured, she had been diagnosed with, among other things, Graves' Disease, hypothyroidism, obesity,

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] At the time that Plaintiff commenced this action, Andrew Saul was the Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is thus replaced as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

dysfunction of the spine, swelling and burning of the legs, h. pylori infection, sacroiliac joint dysfunction, hidradenitis suppurativa, and fibromyalgia. ECF No. 15 ¶ 14. She last worked as an office manager for a chiropractic office. ECF No. 13 at 447. Her employment there required that she be seated approximately fifty percent of the time, lift items generally weighing twenty to thirty pounds, bookkeep, and generally "r[u]n the office." *Id.* at 198. She continued in this position until late 2009. *Id.* at 441. Plaintiff claims that, after 2009, her myriad medical issues became too severe to allow her to continue working. *Id.* at 200.

On March 19, 2018, Plaintiff filed her initial application for SSDI, alleging an initial onset date of disability of February 9, 2010. ECF No. 15 ¶ 1. This initial onset date was later amended to June 12, 2014. *Id.* ¶ 2. Plaintiff's claim was denied, and an appeal seeking reconsideration was filed and subsequently denied on December 14, 2018. *Id.* ¶¶ 3–4. Plaintiff then requested a hearing on her application, which was held before Administrative Law Judge Michael McKenna (the "ALJ") on September 11, 2019. *Id.* ¶ 5. On December 1, 2019, the ALJ issued a decision unfavorable to Plaintiff. *Id.* ¶¶ 6. The Appeals Counsel declined to review that decision. *Id.* ¶ 7. She subsequently filed the instant action on October 16, 2020. ECF No. 1.

## II. LEGAL STANDARD

Initially, "to be eligible for disability insurance benefits, an applicant must be 'insured for disability insurance benefits.'" *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989) (quoting 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1)). For Plaintiff to obtain SSDI, she "must demonstrate that she was disabled on the date she was last insured for benefits." *Swainbank v. Astrue*, 356 F. App'x 545, 547 (2d Cir. 2009). In the present case, the parties agree that Plaintiff's date last insured was September 30, 2015. The Court may consider evidence of Plaintiff's condition after September

30, 2015, only insofar as it is "pertinent to [her] condition prior to that date." *O'Connell v. Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014).

A person is "disabled" and entitled to disability insurance benefits if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3). In addition, a claimant must establish that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Social Security Act's definition of disability. *See* 20 C.F.R. § 404.1520. The five steps are best summarized as: "(1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has 'a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509' or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment 'meets or equals' an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the 'meets or equals' requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform

[her] past relevant work; and (5) if the claimant is unable to perform [her] past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform in light of [her] RFC and [her] education, age, and work experience." *Meade v. Kijakazi*, No. 3:20-CV-00868 (KAD), 2021 WL 4810604, at *1 (D. Conn. Oct. 15, 2021); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1509.  The claimant bears the burden of proof with respect to steps one through four, while the Commissioner bears the burden of proof for step five.  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See, e.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotations marks and citation omitted).

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quotation marks and citation omitted).  "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently."  *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009).  The court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Social Sec.*, 692 F.3d 118, 122 (2d Cir.

4

2012), and reject the Commissioner's findings of fact only "if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (internal citation omitted) (emphasis in original). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

### III. DISCUSSION

In her motion, Plaintiff asserts the ALJ erred in five distinct ways. None of these contentions relates to step one of the five-step analysis, as Plaintiff acknowledges the ALJ was correct in his assessment that she was not gainfully employed. Instead, Plaintiff's arguments pertain to the ALJ's decision regarding steps two through five. Specifically, Plaintiff contends the ALJ's finding under step two was incorrect because the ALJ did not conclude that Plaintiff's conditions of hidradenitis suppurativa and Graves' disease were severe. Plaintiff further disagrees with the ALJ's step three finding that her conditions do not equal a medically determinable listing and the ALJ's step four finding that Plaintiff can perform her past relevant work. Finally, Plaintiff disagrees with the ALJ's step five determination that there are other jobs in the national economy that Plaintiff is capable of performing at the light exertion level. Plaintiff also contends that the ALJ improperly assigned too much weight to the opinions of state agency experts, while failing to address the opinions of other treating physicians. The Court will address each of the contentions below.[3]

> A. The ALJ's Step Two Determinations Are Supported by Substantial Evidence in the Record

The only part of the ALJ's holding under step two with which Plaintiff disagrees is the finding that hidradenitis suppurativa and Graves' Disease (along with the hypothyroidism that

---

[3] The Court has reviewed the entirety of the medical record and cites to representative examples of evidence in the record, where necessary, to explain its decision.

5

accompanies it) are not "severe" medical conditions. However, the ALJ's findings related to both hidradenitis suppurativa and Graves' Disease are well supported by the record. Plaintiff was diagnosed with Graves' Disease when she was twenty-five years old; she underwent surgery in 1991 related to this diagnosis. ECF No. 13 at 36. From that time on, however, it does not appear that Plaintiff suffered any major effects related to Graves' Disease. Rather, she was able to successfully work for nearly twenty years after this surgery. This diagnosis did not require hospitalization or significant treatment, and therefore the ALJ correctly found Plaintiff's hypothyroidism "caused no more than a minimal limitation in functioning." ECF No. 13 at 14.

In arguing this finding is unsupported, Plaintiff does not point to any medical records or evidence that the ALJ overlooked. Rather, Plaintiff focuses on the longstanding nature of the illness and the frequency of the symptoms related to the disease as reasons the ALJ should have considered it severe. Plaintiff has provided no support, however, for the proposition that longstanding symptoms on their own constitute evidence that requires an ALJ to find a condition severe. In fact, Plaintiff's ability to work despite the longstanding nature of this condition persuades the Court that the ALJ correctly determined the condition is not severe. Thus, there is sufficient evidence to support the ALJ's decision regarding Graves' Disease and its accompanying hypothyroidism.

Plaintiff's argument related to hidradenitis suppurativa fails for much the same reasons. Once again, Plaintiff has not presented evidence that the condition was severe or impacted her ability to remain gainfully employed. Instead, she argues that it is longstanding and may flare up at any time. ECF No. 16-1 at 15. While this may be true, Plaintiff had been gainfully employed for more than a decade after being diagnosed with this disease. The ALJ also noted that numerous skin examinations between 1997 and 2015 showed no abnormalities. *See, e.g.*, ECF No. 13 at 897

(no rash); 1497 (no skin lesions). Therefore, there is substantial evidence supporting the ALJ's finding that hidradenitis suppurativa was not a serious condition.

The Appeals Council's conclusion that the new evidence did not change the outcome of the decision is also supported by the record. *See* 20 CF.R. § 416.1470(a)(5) (noting that the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision"). For instance, the new records submitted to the Appeals Council demonstrated that when Plaintiff was diagnosed with hidradenitis suppurativa in 1997, she declined injections and surgery. ECF No. 13 at 71. In sum, although Plaintiff's medical records evince that she suffered from Graves' Disease and hidradenitis suppurativa, the ALJ's conclusion that neither condition was severe is supported by the record.

> B. <u>The ALJ's Step Three Finding that Plaintiff's Condition Does Not Meet or Medically Equal a Listing is Supported by Substantial Evidence in the Record</u>

After examining all the medical evidence before him, the ALJ decided that Plaintiff's combination of symptoms did not meet or medically equal a listing. Initially, the burden for proving that her conditions, when taken in combination, are equivalent to a listing falls on Plaintiff. *See Padula v. Astrue*, 514 F. App'x 49, 50 (2d Cir. 2013). In order to satisfy this burden, Plaintiff must "meet *all* of the specified medical criteria" in the listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Alternatively, Plaintiff can show her "combination of impairments, is 'equivalent' to a listed impairment." *Id.* To do this, she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original). Importantly, a claimant cannot qualify under the equivalence standard by

showing that the "overall functional impact" of an unlisted impairment or combination of impairments is as severe as that of the listed disability. *Id.*

Here, Plaintiff does not argue that her impairments actually met the criteria of a listing but, rather, that her impairments, when taken together, are equivalent to a listing. The parties agree that the listing relevant to the present action is listing 1.04, relating to disorders of the spine. At the time of the ALJ's ruling,[4] 1.04 stated:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> a. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> b. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> c. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively [].

As mentioned above, Plaintiff does not argue that her medical records actually satisfy any of the listing criteria but instead argues that, taken together, her medical history is the equivalent of the listing. In order to equal the listing, Plaintiff must establish medical findings of at least equal severity to the criteria of 1.04(a), (b), or (c). *See* 20 C.F.R. § 404.1526(a). The ALJ's finding that she did not satisfy those criteria is supported by substantial evidence. First, one of her treating

---

[4] At the time of the ALJ's decision, disorders of the spine was listing 1.04, and the ALJ applied the criteria found therein to Plaintiff's case. Although the relevant listing has since changed, the Court will also apply the listing that was in effect at the time of Plaintiff's hearing to the present appeal. *See Correa v. Comm'r Soc. Sec. Admin.*, No. 3:16-CV-01234 (VLB), 2017 WL 4457442, at *5 n.1 (D. Conn. Oct. 6, 2017).

physicians found "no evidence of specific nerve root or spinal cord compression," ECF No. 13 at 571–72, as would be required to equal listing 1.04(a).  Further, there was no mention of sensory or reflex loss, and in fact repeated testing confirmed Plaintiff's senses and reflexes were normal. *See, e.g.*, ECF No. 13 at 140.  Therefore, Plaintiff's medical ailments did not rise to the level of a listing under 1.04(a).

Section 1.04(b) requires that Plaintiff could not remain in the same posture or position for more than two hours due to burning or pain, as confirmed through surgery, biopsy, or medical imaging.  Plaintiff points to no surgical intervention or biopsy results in her medical record, and the Court's review has revealed none.  Thus, her medical condition does not rise to the level of a listing under 1.04(b).

Finally, with respect to section 1.04(c), one of Plaintiff's physicians found that "there is no evidence of spinal instability or spinal stenosis to explain her radicular discomfort."  ECF No. 13 at 569.  While, as discussed throughout this opinion, Plaintiff did complain about her ability to walk, there is simply no medical evidence in the record to support the idea that as of her date last insured, she could not effectively ambulate.  Therefore, Plaintiff's medical condition does not equal listing 1.04(c).

In response to the ALJ's finding, Plaintiff points to her long and complicated medical history as evidence that her conditions equal a listing.  Plaintiff does not, however, explain in any detail how or why this is the case.  Plaintiff also repeatedly discusses conditions that appear to have very little if anything to do with her spine as support for her contention that her ailments are equivalent to a listing under 1.04.  ECF No. 16-1 at 20 (discussing auto-immune disease, fibromyalgia, and Graves' Disease).  While these conditions may affect Plaintiff's everyday life, their relevance to whether her condition medically equals a listing is not clear to the Court.  Nor

does Plaintiff provide any legal authority to support the proposition that the sheer number of medical ailments one suffers from can equal a listing regardless of their severity or combined medical effect.

In sum, there is substantial evidence supporting the ALJ's finding that Plaintiff's condition as of her date last insured did not equal a listing for disorders of the spine.

> C. <u>The ALJ's Step Four Finding that Plaintiff Can Perform Her Past Relevant Work as that Work Is Generally Performed Is Supported by Substantial Evidence in the Record</u>

The ALJ appropriately recognized that, before proceeding to step four, he had to determine Plaintiff's RFC and that, to do so, he was required to consider all of Plaintiff's impairments, including those that are not severe. ECF No. 13 at 12-13. After examining the evidence in the record, as well as the testimony presented at the hearing below, the ALJ determined that as of the date Plaintiff was last insured, she had the residual functional capacity to perform light work, including occasionally climbing ramps, stairs, ladders, ropes, and scaffolds. ECF No. 13 at 15. She could frequently balance and occasionally stoop, kneel, crouch, and crawl. *Id.* The ALJ further found that Plaintiff's prior work as an office manager required light exertion as generally performed, but as performed by Plaintiff required medium exertion. *Id.* at 18.

The ALJ's findings are amply supported by substantial evidence in the record. In his decision, the ALJ found that Plaintiff has lumbar spine degenerative disc disease and cervical spine degenerative disc disease and that diagnostic imaging revealed mild degenerative disc disease with no evidence of significant canal stenosis or neural foraminal narrowing. ECF No. 13 at 16. The ALJ further noted that throughout the relevant time period, Plaintiff presented as obese, weighing between 245 and 255 pounds. *Id.* But despite these issues, numerous physicians noted that during the relevant time period, Plaintiff maintained a normal gait, had normal muscle tone,

had normal strength, and had no impairment of coordination or balance. *See, e.g.*, ECF No. 13 at 568 (non-antalgic gait, able to toe walk and heel walk with good strength, full and painless range of motion as of June 11, 2015); *id.* at 571 (non-antalgic gate, reasonably full lumbar motion, and strength is 5/5 on June 12, 2014); *id.* at 666 (gait is normal on April 20, 2015). In fact, as late as September 8, 2015, only twenty-two days prior to Plaintiff's date last insured, the medical records indicate that her gait and stance were normal. *Id.* at 913. Further still, the next day, September 9, 2015, Plaintiff saw a rheumatology expert. Despite Plaintiff reporting that she was unable to stand or walk for any length of time, the physician assistant reported that Plaintiff had "normal gait and posture, no synovitis, and no joint swelling," and recommended that she continue treatment with her primary care physician for fibromyalgia. *Id.* at 36, 38. The fact that more aggressive treatment was not suggested supports the ALJ's findings. After considering Plaintiff's testimony as well as these medical records, the ALJ determined that while Plaintiff's prior job as office manager was actually performed at the medium exertion level, there was nothing preventing her from performing the job as normally performed at the light exertion level.

Plaintiff argues that given her past work "as an office manager as actually performed at the medium exertion level," a finding that she could perform such past work is not supported. ECF No. 16-2 at 9. This argument, however, appears to misapprehend the ALJ's finding. The ALJ did not find that Plaintiff could perform her past work as she had actually performed it, but rather "as that work is generally performed." ECF No. 13 at 19. There appears to be no dispute that such work is ordinarily performed at the light exertion level and would be less strenuous than Plaintiff's actual prior position. Plaintiff's argument that the ALJ was mistaken in determining she could perform any light exertion work at all is addressed below.

> D. <u>The ALJ's Step Five Findings Regarding Plaintiff's Residual Functional Capacity Are Supported by Substantial Evidence in the Record</u>

Plaintiff argues that the ALJ incorrectly found that as of her date last insured, Plaintiff had a residual functional capacity that allowed her to perform light work. Plaintiff initially argues that the ALJ's finding is contradictory on its face as the ALJ found that Plaintiff can occasionally climb scaffolding and ropes, but also must avoid heights. ECF No. 16-1 at 10. Practically, however, this distinction makes no difference. It is undisputed that none of the jobs the ALJ determined Plaintiff could perform require climbing of any kind.

Additionally, Plaintiff points to several medical records that purportedly support her position that she is unable to perform light work. ECF No. 16-1 at 12–13. Initially, the areas of the record Plaintiff believes support her position are overwhelmingly notes of what Plaintiff reported to her doctors. None of these records contain independent findings by the healthcare providers that support Plaintiff's contention that she was unable to occasionally kneel, crouch, or crawl. It is clear to the Court that there is substantial evidence supporting the ALJ's decision that, as of her date last insured, Plaintiff was capable of performing light work.

Finally, Plaintiff contends the ALJ did not assess the credibility of several physicians' opinions provided by Plaintiff, and thus failed to appropriately weigh those opinions. Plaintiff's argument fails to acknowledge that the regulations differentiate between medical opinions and medical evidence; not all evidence from a physician related to the medical history of a plaintiff is considered a medical *opinion*. A "medical opinion" is defined as a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." *Id.* § 404.1513(a)(2). As discussed further below, an ALJ must articulate in the decision how persuasive the ALJ finds a medical opinion. 20 C.F.R. § 404.1520c(b).

Medical providers can also offer "objective medical evidence," such as "medical signs, laboratory findings, or both," or "other medical evidence," which is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the] impairments, [the] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(1)–(3). How an ALJ considers objective or other medical evidence is governed by 20 C.F.R. § 404.1520b. Nothing in Section 404.1520b requires the ALJ to articulate specific findings regarding each piece of medical evidence; to the contrary, the regulations specify that the ALJ need not provide any analysis about how the ALJ considered various types of evidence that is "inherently neither valuable nor persuasive" that are listed in Section 404.1520b(c)(1)-(3). Rather, the ALJ will "review all of the evidence relevant" to the claim and "make findings about what the evidence shows." 20 C.F.R. § 404.1520b.

Here, none of the records that Plaintiff claims the ALJ disregarded included medical *opinions* requiring an analysis under the factors listed in 20 C.F.R. § 404.1520c. *See* ECF No. 13 at 518, 567, 665, 743, 1497. That is, these records do not contain "statements" about what Plaintiff could "still do" despite her impairments and whether she had "one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). Instead, these records consist of notes, clinical findings, and test results, which are properly classified as either objective or other medical evidence. None of the five medical providers at issue give any opinion on what Plaintiff can or cannot do as a result of her impairments. Thus, the ALJ was not required to engage in the 404.1520c analysis for these records and instead could consider the records more generally as medical evidence, which the decision demonstrates he did. *See* ECF No. 13 at 16-17.

The only medical opinion before the ALJ was that of Dr. Mabasa, who opined on December 14, 2018, that Plaintiff was unable to lift and that her activity was restricted by a cardiac history and vision problems. The ALJ was required to articulate how persuasive that opinion was, and the ALJ's decision that the medical opinion was not persuasive is sufficiently supported by the record. To begin, Plaintiff relies on the outdated "treating physician rule," which gave controlling weight to opinions of a claimant's treating physician under certain circumstances, *see* 20 C.F.R. § 404.1527(c)(2) (applying to claims filed before March 27, 2017). But Plaintiff's claim was filed on March 18, 2018. Therefore, as Defendant points out, the appropriate regulation for the ALJ's consideration is 20 C.F.R. § 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." Under that newer rule, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including from the claimant's medical sources. 20 C.F.R. § 404.1520c(a). The regulations list several factors relevant to the consideration of medical opinions; the most important of these factors are supportability and consistency. *Id.* § 404.1520c(b)(2). The ALJ generally also considers the medical provider's relationship with the claimant, the medical professional's specialization, and other factors, such as evidence showing that a medical source has familiarity with the other evidence in a claim or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.* § 404.1520c(c)(3)-(5).

Here, the ALJ found Dr. Mabasa's medical opinion to not be well supported because it was not sufficiently explained. ECF No. 13 at 17. Additionally, Dr. Mabasa did not begin treating Plaintiff until 2017. His opinions regarding Plaintiff's condition prior to the date last insured were thus not based on personal examination but, rather, on a review of Plaintiff's medical records. *Id.* Finally, the ALJ noted that many of Plaintiff's medical records during the relevant time period

indicated that her gait, strength, and sensation in her limbs were normal. This is inconsistent with Dr. Mabasa's opinion, and, as a result, the ALJ found Dr. Mabasa's opinion unpersuasive. The ALJ's reasoning is well supported by the record and thus his ultimate finding that Dr. Mabasa's opinion was not persuasive is also supported by substantial evidence.

Finally, the ALJ's finding that the state agency physicians' opinions were persuasive is supported by the record. Plaintiff has provided no evidence that the failure to actually examine Plaintiff is a disqualifying factor in a physician's opinion. In fact, this cannot be the case, as Plaintiff believes Dr. Mabasa's opinion should be given greater weight despite the fact that he never examined Plaintiff during the relevant time period. Regardless, the state agency's position, particularly that Plaintiff was able to walk normally, with normal strength and sensation, is well supported by the record. Thus, the ALJ's finding that these opinions were persuasive is supported by substantial evidence in the record.

## IV.   CONCLUSION

For the reasons described herein, Plaintiff's Motion For Order Reversing the Decision of the Commissioner (ECF No. 16) is hereby DENIED. Defendant's Motion for an Order Affirming the Commissioner's Decision (ECF No. 18) is hereby GRANTED. The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED** at Hartford, Connecticut, this 28th day of March, 2022.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE